### State v. Domers
*[Cite as 4 AOA 337]*

*Case No. 2535*
*Wayne County, (9th)*
*Decided June 7, 1990*

*Richard Benson, Assistant Prosecuting Attorney, 538 N. Market St., Wooster, OH 44691, for Plaintiff.*

*Thomas T. Flynn, Attorney at Law, 99 E. Ohio Ave., Box 116, Rittman, OH 44270, for Defendant.*

BAIRD, J.

This cause comes before the court upon the appeal of Duane B. Domers from his conviction in the Wayne Country Municipal Court for operating a motor vehicle while under suspension, R.C. 4507.02(B).

Domers was cited for the above offense of September 1, 1989. At his arraignment of September 12, Domers stated that he would be able to hire his own attorney, Richard McMannis, to depend him at trial. The court set trial for October 26, 1989. On that date, Domers appeared in court without his counsel:

"* * *.

"THE COURT: Well, Mr, Domers, the problem I have is that you were cited on the first of September, today is the twenty-sixth of October. This matter has been scheduled for trial since the thirteenth of September. We have no indication from any attorney that you're represented. No indication that you wouldn't be prepared to go to trial today. You had indicated to Judge Miller that you would be hiring your own attorney.

"MR. DOMERS: Yes.

"THE COURT: And now you walk into Court here today, nearly two months after the date that you were cited and you tell me that you're not ready to go to trial because your attorney isn't here and you tell me you haven't paid your attorney. In my experience, Mr. Domers, that's the reason he isn't here because you haven't paid him.

"MR. DOMERS: I talked to him yesterday and he said to come down and try to get a contin-

uance, he'd tried to call and the judge, I guess you, yourself was out Tuesday, he wasn't able to contact you.

"THE COURT: Your first contact with him was when?

"MR. DOMERS: Not my first contact-

"THE COURT: When was your first contact with him?

"MR. DOMERS: Clear back in September, he's got a copy of the ticket.

"THE COURT: Well, Mr Domers, I'm going to continue this case then till next Monday.

"MR. DOMERS: Okay.

"THE COURT: And that's it.

"MR. DOMERS: Okay, all right. I appreciate that.

"THE COURT: And I'm telling you right out front there won't be any further continuances under any circumstances.

"MR. DOMERS: Okay.

"THE COURT: I don't care if you're, the attorney that you have chosen is, if he's got another commitment that date then you'll have to find a different attorney. I'm not going to continue it any further. You've had nearly two months to be here today prepared to go to trial and you evidently haven't taken that particularly seriously. I just want to make sure there's no misunderstanding.

"We will be going to trial Monday with or without an attorney sitting next to you. Do you understand that?

"MR. DOMERS: Okay, affirmative.

"* * *."

Later that day, Domers obtained a letter from attorney McMannis, in which the attorney explained that he would be unable to appear in court on October 30, but that he could represent him if the court would grant a continuance until sometime after November 24. Domers filed this letter with the court on Friday, October 27. On Monday, October 30, Domers again appeared in court without his counsel.

"* * *

"THE COURT: Now, for the record, Mr Domers, if you will recall when we were last in Court at that point you'd had approximately seven weeks to hire an attorney and I told you that the case would be going to trial today and if, (sic) you were to be here with an attorney. You're not here with an attorney. I told you that if the attorney, Mr. McMannis, that you said you would talk to, was unable to be here today that you'd have to make arrangements for someone else to come and represent you. We have this letter that

you brought to Court on Friday saying Mr. McMannis would not be able to represent you today so we will be proceeding with trial.

"MR. DOMERS: I don't have any other attorney.

"THE COURT: I beg your pardon?

"MR. DOMERS: I don't have any other attorney that I know other than him

"THE COURT: As you know there are literally thousands of other attorneys in the State of Ohio.

"MR. DOMERS: Yeah, he's the only one I trust though.

"* * *."

The court thereupon proceeded to hold a bench trial, with Domers defending himself. The court found Domers guilty, and sentenced him, *inter alia*, to sixty days in the country jail.

### ASSIGNMENT OF ERROR I

"The court erred by not granting appellant a reasonable continuance to secure counsel."

The denial of a motion for continuance is within the sound, broad discretion of the court. *State* v. *Jones* (1987), 42 Ohio App. 3d 14, 15. The trial court must balance several factors in ruling continuances:

"* * * These factors, representing competing interests, include the defendant's right to counsel, any potential prejudice to the defendant and to the state, the court's right to, control its own docket, and the public's interest in obtaining prompt justice. To balance the weight of these various factors, consideration must be directed to several areas of inquiry. What was the length of the delay requested? Was any other continuance granted? What is the reason cited for the delay? Is the need for the continuance attributable to the party requesting it? What, if any, other relevant factors are present? * * *." *Id.* at 15-16.

In view of the numerous competing factors involved in this case, we do not find that the trial court's denial of the continuance was unreasonable, arbitrary, or capricious. See *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 250.

Appellant's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

"The court erred in imposing a jail sentence when the record reflects that appellant did not voluntarily waive his right to counsel after being fully advised it."

Driving while under suspension in violation of R.C. 4507.02(B) is a first-degree misdemeanor, R.C. 4507.99(A), and is classified as a "petty offense" by Crim. R. 2. In the landmark case of *Argersinger* v. *Hamlin* (1972), 407 U. S. 25, the Supreme Court of the United States determined the extent of a defendant's Sixth and Fourteenth Amendment right to counsel at trial for a petty offense:

"* * * We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37. Subsequently, Ohio Crim. R. 44 was enacted, incorporating the *Argersinger* rule in part (B):

"* * *. *Counsel in petty offenses.* Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel."

In the case *sub judice*, there is no dispute that Domers did not knowingly, intelligently, and voluntarily waive his right to counsel in a hearing in open court, as required by Crim. R 44(C). Rather, the issue here revolves around the meaning and effect of the phrase "unable to obtain counsel" in the context of Crim. R. 44(B).

Appellee contends that the imposition of a jail sentence was proper under Crim. R. 44(B) because Domers was *able* to obtain counsel, despite the fact that his counsel was unable to represent him on the day of trial. As evidence of appellant's ability to obtain counsel, appellee asserts the following facts in its brief:

"* * *.

"In the case at bar there is no claim of indigency. At his September 12th arraignment, Defendant, in response to the court's question, clearly indicated his intention to retain Attorney McMannis. Again, at the hearing on October 26th, Defendant acknowledged that he had seen Attorney McMannis on two occasions prior to the trial date, and that he anticipated representation by Attorney McMannis. Finally, at the trial on October 30th, Defendant insisted that he had no other attorney as Attorney McMannis was the only attorney whom he trusted. At no time did he claim indigency or an inability to retain counsel, nor did he request court assistance in obtaining counsel.

"* * *."

As authority for its contention, appellee cites the holding of this court in *State* v. *Haag* (1976), 49 Ohio App. 2d 268:

"* * *.

"We hold that then a defendant (1) is convicted of a petty offense; (2) an imprisonment penalty is imposed; and (3) he is not represented by an attorney at his trial, the imprisonment portion of the sentence will be vacated, unless a record is made (in accordance with Crim. R. 22 and Crim. R. 44) which affirmatively demonstrates either that the defendant would have been able to obtain counsel, or he knowingly waived his Sixth Amendment right to counsel.

"* * *."

Upon re-examination, we find that our holding in *Haag* must not be read so as to allow a defendant who is convicted of a petty offense, and who was not represented by an attorney at trial, to be sentenced to a term of incarceration upon a showing that the defendant "would have been able to obtain counsel". A construction of the phrase "unable to obtain counsel" that would condone the proceedings in the case *sub judice* is clearly erroneous, as its effect is to create an *implied* waiver of the right to counsel based upon the fact that the defendant had the means and opportunity to obtain counsel, yet failed to do so due to his own negligence. To allow such an implied waiver would be in direct violation of the requirements of the Constitution, and of Crim. R. 44(B) and (C).

Rather, "unable to obtain counsel" is properly read as an indication that the appointment of counsel by the trial court is not to be limited exclusively to cases where the defendant is indigent. *State* v. *Tymcio* (1975), 42 Ohio St. 2d. 39, 44; *State* v. *Haag, supra* at 271. Even where an accused is financially able, in whole or in part, to obtain the assistance of counsel, but is unable to do so *for whatever reason*, appointed counsel must be provided, or no sentence of incarceration may be imposed. *State* v. *Tymcio, supra* at 45.

"* * * To make the right to the assistance of court-appointed counsel a factual reality, the determination of need must turn, not upon whether an accused ought to be able to employ counsel, but whether he is in fact able to do so. Absent a knowledgeable and intelligent waiver, a defendant may not be imprisoned unless he was represented by counsel at his trial. * * *." *Id.*

*Argersinger* v. *Hamlin, supra,* clearly held that the right to counsel in this context requires representation by counsel at trial. Thus, the determination of whether in fact a defendant is "unable to obtain counsel" turns upon a single question — whether the defendant is represented by counsel *at trial.*

After denying the defendant continuance in the case *sub judice,* the trial court had two options pursuant to Crim. R. 44(B): "1) to appoint counsel for the defendant, or 2) to proceed to try the defendant without benefit of counsel." Having chosen the latter course, the court was bound by the strictures of the Constitution, as delineated in *Argersinger* v. *Hamlin, supra,* and by Crim. R. 44(B), and therefore could not impose a sentence of incarceration upon its finding of guilt.

> *Judgment reversed and*
> *cause remanded.*

CIRIGLIANO, J., concurs.

QUILLIN, P. J., concurs in part and dissents in part.

The majority reads the phrase in Crim. R. 44 "unable to obtain counsel" to mean "does not have counsel" and thereby ignores its plain meaning. Had the rulemakers intended that a defendant must either have counsel or expressly waive counsel, they could have said so.

In the case *sub judice,* the defendant, no stranger to the criminal court system, affirmatively asserted that he was able to obtain counsel, yet refused or neglected to do so despite the court's repeated warnings as to the consequences. Similar facts were before the fifth district appeals court in *State* v. *Robinson* (Nov. 15, 1988), Knox App. No. 88-CA-14, unreported. That court properly held that the defendant was able to obtain counsel despite counsel's absence on the date of trial, and affirmed the trial court's imposition of a jail sentence. I would reach the same result here. The holding of the majority in the case *sub judice* will provide defendants with a new method to manipulate the judgment process.

The majority's reliance on *Argersinger* v. *Hamlin, supra* and *State* v. *Tymcio, supra,* is misplaced, a these cases are distinguishable on their facts. *Argersinger* involved an indigent defendant who was denied assistance of counsel. *Tymcio* involved the denial of counsel to a defendant who represented to the court "that he has been unable while under bond to obtain adequate counsel with his available resources because of

demands for substantial cash retainers." *State* v. *Tymcio, supra* at 44. Neither of those cases involved a situation, as here, where the defendant merely thumbed his nose at the court.

I would affirm both the judgment of conviction and the sentence imposed by the trial court.